# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### August 25, 2011 Session

## CLIFTON A. LAKE and CHARLEEN J. LAKE ET AL.
### v.
## THE MEMPHIS LANDSMEN, L.L.C., ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-00-6094-00      John R. McCarroll, Jr., Judge**

---

**No. W2011-00660-COA-RM-CV - Filed October 21, 2011**

---

This case is before us upon mandate from the Tennessee Supreme Court for reconsideration of our previous opinion, *Clifton Lake, et. al. v. Memphis Landsmen, L.L.C., et al.*, No. W2009-00526-COA-R3-CV, 2010 WL 891867 (Tenn. Ct. App. March 15, 2010), in light of the United States Supreme Court's decision in *Williamson v. Mazda Motor of America, Inc., et al.*, 131 S. Ct. 1131, 179 L. Ed.2d 75 (2011). Our conclusion, in *Lake*, that Appellants' claims, based upon the type of glass and the lack of passenger seatbelts, are pre-empted is not disturbed by the *Williamson* decision because the basis of our holding involved more than preservation of the manufacturers' ability to choose under the safety regulations. Under the law of the case doctrine, and because further review would exceed the scope of the Tennessee Supreme Court's mandate, we decline to revisit our decision concerning the perimeter seating issue. Reversed and Remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Gary K. Smith and C. Philip M. Campbell, Memphis, Tennessee, for the appellants, Clifton A. Lake and Charleen J. Lake.

James B. Summers, Kirk A. Caraway, and Heather W. Fletcher, Memphis, Tennessee, for the appellee, Budget Rent A Car System, Inc.

Molly M. Glover, Steven N. Snyder, Jr., Aaron R. Parker, and Eric J. Lewellyn, Memphis, Tennessee, for the appellee, Metrotrans Corporation.

Kenneth R. Rudstrom, Memphis, Tennessee, and James E. Singer, Atlanta, Georgia, for the appellee, Memphis Landsmen, L.L.C.

### OPINION

Before addressing the decision in ***Williamson***, we first pause for a truncated review of the relevant factual and procedural history of this case. A thorough recitation is set out in this Court's previous opinion, ***Clifton Lake, et. al. v. Memphis Landsmen, L.L.C., et al.***, No. W2009-00526-COA-R3-CV, 2010 WL 891867 (Tenn. Ct. App. March 15, 2010) ("***Lake I***").

Clifton Lake was injured on March 18, 1998 when the shuttle bus, in which he was a passenger, collided with a concrete truck. ***Lake I*** at \*1. The bus, which was owned by Memphis Landsmen, L.L.C., was on its way to the Budget-Rent-a-Car location in Memphis. Memphis Landsmen operated the bus under a franchise agreement with Budget. ***Id***. When the concrete truck struck the bus, the bus spun into a light pole before coming to a stop. ***Id***. At some point, Mr. Lake was ejected from the bus and hit his head on the concrete curb, thus sustaining severe brain injury. ***Id***. The bus had perimeter seating, which is seating facing the center of the bus, tempered glass windows, and no passenger seatbelts.[1] ***Id***.

Mr. Lake and his wife (together, "Appellants") filed suit against Memphis Landsmen, Metrotrans Corporation (the bus manufacturer) and Budget (together, "Appellees"), alleging that the shuttle bus was unreasonably dangerous because it did not have passenger seatbelts, had tempered glass windows and used perimeter seating. ***Lake I***, at \*1. The Lakes also asserted negligence against Memphis Landsmen in the operation and driving of the bus. ***Id***. The Defendants/Appellees answered, raising the defenses of comparative fault and pre-emption. ***Id***.

Beginning on August 4, 2008, the case was tried to a jury. ***Lake I***, at \*3. At the close of Plaintiffs'/Appellants' proof, the trial court denied Appellees' motions for directed verdict, and again denied the renewed motions for directed verdict at the close of all proof. ***Id***. The jury found that the Lakes had suffered $8,543,630.00 in damages; however, the jury determined that one hundred percent of the fault lay with the driver of the concrete truck,

---

[1] As explained in ***Lake I***, "tempered glass is a glass that has been subjected to a heat treatment to make it resistant to breaking. Laminate glass is glass that is made up of two layers of glass, with a plastic layer between the two layers of glass. Glazing refers to different types of glass, i.e., tempered versus laminate. Advanced glazing refers to laminate or glass-plastic glazing." ***Lake I***, at \*1, n. 2 (citing ***O'Hara v. General Motors Corp.***, 508 F.3d 753, n. 1 (5th Cir. 2007)).

which was owned and operated by a non-party, Horn Lake Redi-Mix, barring recovery. *Id*. An order on the jury verdict was entered on October 10, 2008. *Id*. The Lakes' motion for new trial was denied by order of January 27, 2009, and they appealed to this Court.

As is relevant to the instant remand, in *Lake I* this Court determined that the Lakes' state law claims concerning the use of tempered glass in the bus' side widows were impliedly pre-empted by Federal Motor Vehicle Safety Standards ("FMVSS") 205. *Id*. at *9. Concerning the lack of seatbelts in the bus, we concluded that this claim, too, was pre-empted under FMVSS 208. *Id*. at *11. Moreover, we concluded that the Appellees' motion for directed verdict on the Lakes' negligence and products liability claims based on the use of perimeter seating should have been granted because the Lakes failed to present evidence as to where Mr. Lake was seated (or if he was seated) at the time of the accident. *Id*. at *13. Based upon the lack of such evidence, we concluded that the Lakes had failed to meet their burden to provide evidence that "affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the [Appellees] was a cause in fact of [Mr. Lake's injuries]." *Id*.

Following the March 15, 2010 filing of our opinion in *Lake I*, the Lakes filed a Tennessee Rule of Appellate Procedure 11 application for permission to appeal to the Tennessee Supreme Court on May 14, 2010. On May 27, 2010, the Lakes filed a Citation to Supplemental Authority, pursuant to Tennessee Rule of Appellate Procedure 27(d), noticing the Tennessee Supreme Court of the fact that the United States Supreme Court had granted a petition for writ of certiorari in the case of *Williamson v. Mazda Motor of America*. The Supreme Court issued its opinion in *Williamson* on February 23, 2011.

On March 24, 2011, the Tennessee Supreme Court issued its order granting the Lakes' Tennessee Rule of Appellate Procedure 11 application for the narrow purpose of remanding the case to this Court for reconsideration in light of the United States Supreme Court's opinion in *Williamson v. Mazda Motor of America, Inc., et al.*, 131 S.Ct. 1131 (2011). We now turn to address the relevant facts and holdings in *Williamson*.

In 2002, the Williamson family, riding in their 1993 Mazda minivan, was struck head on by another vehicle. *Williamson*, 131 S. Ct. at 1134. Thanh Williamson was sitting in a rear aisle seat, wearing a lap belt; she died in the accident. *Id*. Delbert and Alexa Williamson were wearing lap-and-shoulder belts; they survived. *Id*. They, along with Thanh's estate, subsequently brought a California state tort suit against Mazda, claiming that Mazda should have installed lap-and-shoulder belts on rear aisle seats, and that Thanh died because Mazda equipped her seat with a lap belt instead. *Id*.

The California trial court dismissed the tort claim, and the California Court of Appeals

affirmed. *Williamson*, 131 S. Ct. at 1134. In affirming, the California Court of Appeals relied upon the case of *Geier v. American Honda Motor Co.*, 529 U.S. 861, 120 S. Ct. 1913, 146 L. Ed.2d 914 (2000), and held that the federal regulation at issue gives the manufacturer a choice between two different types of seatbelts, i.e., lap belts or lap-and-shoulder belts, for use in rear inner seats. *Id*. Consequently, the California intermediate appellate court concluded that a state lawsuit that premises tort liability on a failure to install a particular kind of seatbelt, namely lap-and-shoulder belts, would, in effect, deprive the manufacturer of the choice contemplated under the regulation, and thus found that the Williamsons' suit was pre-empted. *Id*.

The United States Supreme Court granted certiorari, in *Williamson*, to address the question of whether its holding in *Geier* had been misinterpreted by lower courts, which had held that FMVSS 208 pre-empts state tort suits that allege liability based upon the fact that manufacturers should have installed lap-and-shoulder belts, not lap belts, on rear inner seats of passenger vehicles. *Williamson*, 131 S.Ct. at 1135. In finding that the Williamsons' claims were not pre-empted, the Supreme Court distinguished their case from the *Geier* case. In *Geier*, the Supreme Court found that the state law stood as an "'obstacle' to the accomplishment" of a significant federal regulatory objective, namely the maintenance of manufacturer choice. *Geier*, 529 U.S. at 886. The gravamen of the *Geier* decision was the Supreme Court's determination that, giving an automobile manufacturer a choice among different types of passive restraint devices was a "**significant objective** of the federal regulation." *Id*.; *Williamson*, 131 S. Ct. at 1136. In *Williamson*, the Supreme Court determined that, unlike *Geier*, manufacturers' choice was not a significant regulatory objective of FMVSS 208. *Id*. at 1137. This holding was further explained by Justice Sotomayor, in her separate concurrence, wherein she notes:

> [T]he mere fact that an agency regulation allows manufacturers a choice between two options is insufficient to justify implied pre-emption; courts should only find pre-emption where evidence exists that an agency has a regulatory objective—e.g., obtaining a mix of passive restraint mechanisms, as in *Geier*—whose achievement depends on manufacturers having a choice between options. A link between a regulatory objective and the need for manufacturer choice to achieve that objective is the lynchpin of implied pre-emption when there is a saving clause.

*Williamson*, 131 S. Ct. 1140.

As noted by Justice Sotomayor, important to the *Williamson* holding was the fact that

-4-

the federal regulation at issue also contains a saving clause, which states that "[c]ompliance with a federal safety standard "does not exempt any person *from any liability under common law*." *Williamson*, 131 S. Ct. at 1135 (emphasis in original). The *Williamson* Court was careful to note that the mere existence of a saving clause does not, *ipso facto*, foreclose the operation of ordinary conflict pre-emption considerations:

> In light of *Geier*, the statute's express pre-emption clause cannot pre-empt the common-law tort action; but neither can the statute's saving clause foreclose or limit the operation of ordinary conflict pre-emption principles.

*Williamson*, 131 S.Ct. at 1135.[2]

From our reading, the *Williamson* holding is narrow; it does not upset the *Geier* holding. Consequently, as a threshold matter, our reliance upon *Geier* in *Lake I* was not error. Rather, *Williamson* merely clarifies that manufacturer choice alone is not sufficient to find implied pre-emption of state tort claims. Rather, the inclusion of manufacturer choice must be in furtherance of a specific regulatory objective in order to form the basis of implied pre-emption of the state suit. *See, e.g., Morris v. Mitsubishi Motors North America, Inc.*, No. CV-08-0396-RMP, 2011 WL 1085873, at *8 (E.D. Wash. March 23, 2011) (interpreting *Williamson* to hold that "[a] tort claim may proceed, even if it may have the effect of restricting the manufacturer's choice, when a Court finds that the choice allotted to manufacturers by a regulation is not intended to further a significant regulatory objective"). With this in mind, we turn to address our holdings in *Lake I* concerning both the Lakes' glass claim and their seatbelt claim.

### Pre-emption of Glass Claims

FMVSS 205 specifies the requirements for glazing materials used in motor vehicles and is codified at 49 C.F.R. §571.205. The National Highway Transportation Safety Administration ("NHTSA") has stated that the purpose of FMVSS 205 is to "reduce injuries resulting from impact and glazing surfaces, to ensure a necessary degree of transparency in

---

[2] In his separate concurrence, Justice Thomas opines that the plain language of the saving clause should end the pre-emption inquiry, and that the majority goes too far in deciding the issue on the grounds of whether the lawsuit "stands as an obstacle to the accomplishment and execution of the full purposes and objectives" of FMVSS 208. Justice Thomas specifically rejects "purpose-and-objectives pre-emption as inconsistent with the Constitution because it turns entirely on extratextual 'judicial suppositions'" *Williamson*, 131 S.Ct. 1142 (quoting *Wyeth v. Levine*, 129 S.Ct. 1187, 1214 (2009)). As noted above, the majority opinion in *Williamson* does not reject the *Geier* analysis; rather, the majority holding is based upon its conclusion that manufacturer choice was not a significant objective of the specific regulation at issue.

motor vehicle windows for driver visibility, and to minimize the possibility of occupants being thrown through the vehicle windows in a collision." 49 C.F.R. §571.205 S2. FMVSS 205 incorporates, by reference, the American National Standards Institute ("ANSI") Standards for Safety Glazing Materials, ANSI/SAE Z26.1. At the time of the accident at issue in *Lake I*, and currently, FMVSS 205 provides a choice in the installation of laminated glass, tempered glass, and glass-plastics, with tempered glass allowed in any window other than the windshield. 49 C.F.R. §571.205 S2 (citing ANSI/SAE Z26.1 (1996)). Under the *Williamson* holding, the inclusion of manufacturer choices in the regulation is not, by itself, sufficient to support a finding of pre-emption of a state tort claim. However, manufacturer choice was not the sole basis of our determination of pre-emption in *Lake I*. Therein, we specifically stated that "it is undisputed that the windows of the bus at issue complied with FMVSS 205." *Lake I*, at *6. The question then became whether the Lakes' claim that laminate, as opposed to tempered, glass should have been installed in the shuttle bus stood as "an obstacle to the accomplishment or execution of congressional objectives under the Safety Act," when both types of glass were specifically allowed under FMVSS 205. *Id*. Consistent with *Williamson*, in addressing this question, we necessarily examined the regulation, its history, its objectives, and the agency's view on the regulation. In addition to noting the stated purpose of FMVSS 205, *supra*, we also discussed NHTSA studies on glazing:

> The NHTSA studied the use of advanced glazing in windows in the early 1990's.[3] Following a mandate from Congress, the NHTSA issued notice of proposed rulemaking on both rollover prevention and occupant ejection prevention. In 2002, the NHTSA terminated rulemaking on advance glazing stating that it would focus on "establishing safety performance requirements for ejection mitigation that will allow vehicle manufacturers the discretion to choose any technology that fulfills the requirements." The agency noted that it had concluded in its studies on ejection mitigation that it would not require advanced glazing due to safety and cost concerns. The NHTSA explained that the two primary reasons for this conclusion were (1) "the advent of other ejection mitigation systems," and (2) the fact that advanced side glazing increased the risk of neck injury in some cases. NHTSA also cited an additional reason of the cost associated with modifying vehicles to allow use of windows

---

[3] As noted in *Lake I*, "advanced glazing" refers to laminated glass and glass-plastic glazing materials, the type of glass that the Lakes suggest should have been used. *Lake I* at *8, n. 9 (relying on *O'Hara*, 508 F.3d at n. 1).

with advanced glazing.

*Lake I* at *8 (internal citations and footnotes omitted).

Based upon the foregoing studies and in light of the specific purpose of FMVSS 205 to prevent both ejection and injuries resulting from impact, we concluded that:

> Requiring laminated glass in side windows may decrease the risk of ejection, but would increase the risk of injury from impact with the glass. It appears that the NHTSA left the options for glass open so that the manufacturers could choose the safety features that best accomplished both purposes.

*Id.*

As in *Geier*, we determined that the Lakes' claims "would present an obstacle to the variety and mix of devices that the federal regulation sought" and would also serve as "an obstacle to the accomplishment and execution of a federal policy." *Id.* at *9. This holding was not, however, based solely upon the preservation of manufacturer choice. Rather, the manufacturer choice allowed under FMVSS 205 promotes the ultimate purpose of the regulation, which is to provide the best protection against passenger ejection—a decision that the NHTSA clearly determined was best left to the manufacturer.

Based upon the foregoing, we conclude that our analysis concerning the Lakes' claim *vis-a-vis* the type of glass used in the shuttle bus, is not disturbed by the Supreme Court's holding in *Williamson* as our determination was not based solely upon the preservation of manufacturer choice, but was instead based upon consideration of NHTSA studies and the stated goal of the regulation.

**Pre-emption of Seatbelt Claim**

As noted in *Lake I*, FMVSS 208, 49 C.F.R. §571.208, does not require seatbelts for passengers on buses with a gross vehicle weight of 10,000 pounds or more. *Lake I* at *10. It is undisputed that the shuttle bus at issue in this case had a gross weight in excess of 10,000 pounds. *Id.* In their brief, the Lakes argue, *inter alia*, that the NHTSA "is on the verge of requiring passenger seatbelts in large buses." Thus, the Lakes contend that this imminent requirement renders our holding in *Lake I* inconsistent with a significant regulatory objective, i.e., requiring seatbelts on all buses. We respectfully disagree with the Lakes' argument. In the first instance, this Court cannot speculate as to what the NHTSA may do at some future date. Rather, we are charged with deciding the case upon the regulations and

policies that exist at the time. Moreover, it appears that the Lakes' assertion that the NHTSA will soon require passenger seatbelts on all buses is misplaced as it relies upon pending regulation aimed at motorcoaches, a vehicle category that is separate and distinct from the shuttle bus at issue here.

In a report dated August 18, 2010, NHTSA responded to the National Traffic Safety Board's recommendation that all buses be required to have passenger seatbelts. Federal Motor Vehicle Safety Standards; Motor Coach Definition; Occupant Crash Protection, 75 Fed. Reg. 50958 (Aug. 18, 2010). In response to this recommendation, NHTSA extensively reviewed national crash and fatality data for buses from 1999 to 2008. *Id*. Based upon its review of this data, NHTSA concluded that only 12% of passenger fatalities occurred on buses less than 26,000 pounds. *Id*. Accordingly, rather than requiring seatbelts on all buses, the NHTSA identified buses over 26,000 pounds as the vehicles that presented the most significant risk for passengers and developed a new classification of buses, known as motorcoaches, which were defined as weighing more than 26,000 pounds, having sixteen or more seating positions, and two or more rows of forward-facing seats behind the driver. *Id*. It is the newly designated classification of motorcoaches that would be required to have seatbelts at every seating position. However, NHTSA has declined to recommend passenger seatbelts for buses such as the shuttle bus at issue here, which weighed more than 10,000 pounds but less than 26,000 pounds. Having determined that the Lakes' reliance upon regulations addressing requirements for motorcoaches is misplaced, we now turn to address the substantive question of whether the *Williamson* holding has any effect upon our decision that the Lakes' seatbelt claim is pre-empted.

In *Lake I*, we conceded that, if a manufacturer chooses to install passenger seatbelts in large buses (i.e., more than 10,000 pounds, but less than 26,000 pounds) that manufacturer would still be in compliance with FMVSS 208. *Id.* However, our analysis of this issue did not rest upon the concession that a manufacturer has a choice in whether to install seatbelts:

> We agree with the *MCI* [*Sales & Service, Inc. v. Hinton*, 272 S.W.3d 17 (Tx. Ct. App. 2008)] that it is not impossible to install passenger seatbelts and still be in compliance with federal regulations. That finding, however, does not end our analysis on the preemption issue. Instead we must determine whether the Lakes' claims would be "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Lake I* at *10 (citation omitted). In pursuit of the answer to the obstacle question, we specifically reviewed FMVSS 208 itself, "along with its history and the agency's interpretation of it." *Id.* Concerning the regulation itself, we concluded that:

> FMVSS 208 addresses the necessity of seatbelts in all buses. It requires seatbelts for passengers in smaller buses [i.e., less than 10,000 pounds], but only requires a seatbelt for the driver in larger buses. This does not mean that there is not a federal standard for large buses. If a manufacturer wishes to build a bus without seatbelts, it must build that bus so that its gross vehicle weight is greater than 10,000 pounds.

*Id*. at *11. Following this determination, we specifically turned to address "the policy behind that standard and whether the Lakes' claim would be an obstacle to that policy." *Id*. In our policy inquiry, we noted that:

> As with the windows, the NHTSA has studied the need for seatbelts in large buses and has decided not to adopt a requirement for seatbelts in these vehicles. In an August 19, 1992 letter, Paul Jackson Rice, chief counsel of the NHTSA, explained "NHTSA expressly determined that there is not a safety need for safety belts or another type of occupant crash protection at [the passenger] seating positions."

*Id*. The Lakes argue that our reliance upon Mr. Rice's letter was erroneous. We disagree. While we recognized that Mr. Rice was not a safety expert, Carl Nash, former NHTSA employee, testified that letters, such as Mr. Rice's, are reviewed by the safety experts at NHTSA and are approved before being disseminated. *Id*. At any rate, we did not rely upon this letter for its pre-emptive effect on FMVSS 208 because it addressed the question of whether a proposed state statute would be pre-empted and, so, was not directly on point. *Id*. Rather, we considered the letter "for the policy and reasons behind the requirements of FMVSS 208."[4]  *Id*. In our review of this letter, we concluded that the NHTSA had "determined that seat belts should not be required for passengers on large buses due to both safety and cost concerns." *Id*. While we recognized that Mr. Rice had relied upon a decision made in 1974 in reaching his conclusion, we noted that FMVSS 208 adopted new seatbelt requirements for buses effective September 1, 1991, and that these revisions did not require passenger seatbelts in large buses. *Id*. Therefore, we concluded that the Lakes' claim *vis-a-vis* the lack of seatbelts on the bus:

---

[4] We specifically determined that it is the purview of this Court to look at the reasons behind the policy in determining if the claim would frustrate the purpose of the policy as the Supreme Court, itself, had looked at the reasons behind FMVSS 208 on a no-air-bag claim in *Geier*, and again on a claim against the Coast Guard based upon its failure to adopt a propeller-guard policy in *Spreitsma v. Mercury Marine*, 537 U.S. 51, 123 S. Ct. 518, 154 L. Ed.2d 466 (2002). *Lake I* at *11.

> . . .directly conflicts with the findings and requirements of the
> NHTSA. If we were to find that the claims were not preempted,
> and a jury were to find that the Appellees breached their duty by
> failing to install seatbelts, then all large buses in Tennessee
> would be required to have passenger seatbelts—a requirement
> that is a direct obstacle to the policies and decisions of the
> NHTSA. Further, such a decision would, in effect, require large
> buses across the country to have passenger seatbelts. This
> would absolutely conflict with Congress' goal of uniformity in
> the motor vehicle industry.

*Id*. (citation omitted). In short, our decision was not based upon the protection of the manufacturers' choice of whether to install seatbelts in large buses; rather, it was based upon a review of the plain language of FMVSS 208, and the policies and reasoning behind that regulation. Consequently, our determination that the Lakes' seatbelt claim is pre-empted is not contrary to the Supreme Court's holding in *Williamson*.

### Directed Verdict on Perimeter Seating Issue

Upon remand from the Tennessee Supreme Court, the Lakes ask us to also revisit our holding that the Lakes' claim, based on the use of perimeter seating, should have been dismissed by grant of directed verdict because of the lack of evidence presented at the trial. For the reasons set out below, we decline this invitation.

As noted above, the Tennessee Supreme Court's mandate in remanding this case to us was limited and specific as it directed this Court to reconsider its decision in *Lake I* in light of the United States Supreme Court's opinion in *Williamson*. As discussed in detail above, the *Williamson* decision concerned only the issue of pre-emption, i.e., whether a FMVSS standard that gave automobile manufacturers choices as to the type of seatbelts installed in certain passenger seating positions pre-empted state law claims for negligence against the manufacturer for failing to install the option not chosen.

Our Supreme Court has held that "inferior courts must abide by the orders, decrees and precedents of higher courts." *Weston v. State of Tennessee*, 60 S.W.3d 57, 59 (Tenn. 2001). Moreover, "[n]either a trial court nor an intermediate court has the authority to expand the directive or purpose of [the Tennessee Supreme Court] imposed upon remand." *Id*. Under the *Weston* holding, this Court has no authority to expand the purpose of the remand by considering issues not related to *Williamson* and its holdings on pre-emption.

Even if we assume, *arguendo* that this Court has the authority on remand to reconsider

-10-

the perimeter seating issue, our prior decision on this issue in *Lake I* constitutes the law of the case. The "law of the case" is a "legal doctrine that generally prohibits reconsideration of issues that have already been decided in a prior appeal of the same issue." *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998). Under this doctrine, "an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal." *Id*. The doctrine is "based on the common sense recognition that issues previously litigated and decided by a court of competent jurisdiction ordinarily need not be revisited." *Id*. Only in certain, limited, circumstances may courts deviate from the law of the case. These exceptions are triggered when: (1) the evidence offered at a trial or hearing after remand was substantially different from the evidence in the initial proceeding; (2) the prior ruling was clearly erroneous and would result in a manifest injustice if allowed to stand; (3) the prior decision is contrary to a change in the controlling law, which has occurred between the first and second appeal. *Id*. at 306.

In *Lake I*, we held that the Lakes "failed to present any evidence upon which a jury could find that Mr. Lake was seated in the bus." *Lake I* at \*13. On that issue, the evidence now before us is the same as that considered in reaching our decision in *Lake I*. Furthermore, there has been no decision rendered that is contrary to the law applied in *Lake I*, and there are no grounds for finding that our decision concerning the perimeter seating was erroneous. In short, none of the exceptions to the law of the case doctrine are applicable here. Consequently, were this Court to revisit the issue of directed verdict on the perimeter seating issue, that decision would not only be outside the scope of the Tennessee Supreme Court's remand, but it would also be a direct violation of the law of the case.

For the foregoing reasons, we conclude that the United States Supreme Court's decision in *Williamson* does not effect our previous holding in *Lake I*. Consequently, that decision is affirmed. Costs of this appeal are assessed against the Appellants, Clifton A. Lake and Charleen J. Lake, and their surety.

_____
J. STEVEN STAFFORD, JUDGE